**UNITED STATES ex rel. Stanley KULIS, Relator,**

v.

**Vincent R. MANCUSI, Warden, Attica State Prison, Respondent.**

**Civ. No. 1966-243.**

United States District Court
W. D. New York.

April 5, 1967.

Bartholomew J. Rebore, Forest Hills, N. Y., for relator.

Louis J. Lefkowitz, Atty. Gen., of New York (Richard R. Jenczka, Asst. Atty. Gen., of counsel), for respondent.

HENDERSON, District Judge.

On January 29, 1965, following a jury trial before the Supreme Court of the State of New York, County of New York, resulting in his conviction of the crime of Manslaughter, First Degree, relator was sentenced to from seven to fourteen years' imprisonment. The conviction was unanimously affirmed without opinion by the Appellate Division of the Supreme Court, First Department, on November 17, 1965.[1] On appeal to the New York Court of Appeals, the conviction was affirmed with two judges dissenting.[2]

Pursuant to an order to show cause dated December 22, 1966, the state record and briefs on appeal have been produced for the court's examination. In his application relator relies entirely upon the record and concedes that no further hearing on the facts is required.

The charge against relator resulted from the death of one Mary Augustis on May 9, 1964. Her nude body was found in a third-floor bathroom in an apartment building located at 300 West 51st Street, New York City. Subsequent medical examination revealed that the cause of death was multiple contusions, excoriations of the neck, face and scalp, and traumatic subdural hemorrhage with compression of the brain. Although the deceased, an epileptic, might have self-inflicted any of these injuries individually during an epileptic paroxysm, medical testimony indicated that the injuries could not have been collectively sustained during one seizure. Insertions in the vaginal and anal areas of the body were further indications of homicide.

The bathroom, where the body was found, was apparently open to use by tenants of the building. Shortly after discovery of the body several tenants were questioned and asked to view the deceased but none were able to identify her. A police officer then noticed that the door of an apartment diagonally across from the bathroom was ajar; he knocked and the relator answered. After identifying himself, the officer entered and asked the relator to view the body. He replied that he knew she was dead and did not wish to look, but subsequently he did view the body and identified the deceased as "Mary." Although relator's responses to the police officer were exculpatory, when coupled with the officer's observations it is clear that the officer had reason to believe that relator may have known more about the death than he was revealing.

The day following the discovery of the body, May 10, 1964, while relator was in custody, he was questioned by an Assistant District Attorney. He gave an exculpatory statement as to his activities and association with the deceased on the two days preceding her death. Prior to and during that conversation, relator's requests for counsel were ignored.

On the trial and following the presentation of the people's case, relator took the stand and gave testimony at odds with that given to the Assistant District Attorney. The Assistant District Attor-

1. People v. Kulis, 24 A.D.2d 934, 264 N. Y.S.2d 506 (1st Dep't 1965).

2. People v. Kulis, 18 N.Y.2d 318, 274 N.Y. S.2d 873, 221 N.E.2d 541 (1966).

ney, on rebuttal, testified as to the contradictory statements made to him by the relator. This testimony was admitted and the jury was instructed that it was being received for the limited purpose of impeaching relator's credibility.

■ That the statements given by the relator to the Assistant District Attorney were taken in violation of relator's rights under the Supreme Court's ruling in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) [3] would appear clear. The question presented is whether exculpatory statements of an accused, taken in violation of his rights under that decision, may be used for the purposes of impeachment on rebuttal once the accused has taken the stand and give contradictory but exculpatory testimony.

In Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) the Supreme Court upheld the use of evidence obtained in violation of a defendant's Fourth Amendment rights to contradict his testimony. At page 65, 74 S.Ct. at page 356 the Court summed the problem as follows:

"It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine [Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] would be a perversion of the Fourth Amendment.

"Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."

Of course, Fifth rather than Fourth Amendment rights are here involved.

From the court's review of the record it appears that this case is similar to United States v. Curry, 358 F.2d 904 (2d Cir. 1965). There, at pages 910–911, Chief Judge Lumbard stated:

"The Walder doctrine governs here and permits the government's use of Curry's statement on his cross-examination. Although the government was precluded by the ruling of the district court from using in its direct case Curry's admissions that he participated in the robbery, when Curry attempted to construct an alibi inconsistent with his original statements to the FBI, the government could point out inconsistencies as to collateral items such as whether additional parties were implicated and whether Curry had worn a moustache on a prior occasion. Thus the government may not make any use of evidence which has been suppressed in order to make out a case which is strong enough to have the jury pass upon guilt or innocence. And, likewise, the defendant's denial of the elements of the crime may not be disputed by evidence which is the fruit of illegal action. See Agnello v. United States, supra [269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145]. But once the government has presented a prima facie case without using such evidence, it may use the suppressed evidence to challenge the truth and reliability of the defendant's assertions as to collateral matters."

3. See People v. Donovan, 13 N.Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 628 (1963).

Discussing the argument that the Walder doctrine had been weakened by the Supreme Court's ruling in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), Chief Judge Lumbard went on to observe, at pages 911–912 of 358 F.2d:

"Neither Walder nor any of the cases directly interpreting it indicates that the principle of limited admissibility for collateral impeachment purposes is inapplicable when evidence is excluded because unconstitutionally obtained. An exclusionary rule, whether based on constitutional principles or not, is meant primarily to protect those accused of crime from unfair or unconstitutional police procedures by removing the strongest police incentive to use such procedures. Such a rule often results in excluding highly reliable evidence in order to ensure that those who enforce the law will not profit from violating the law. But it does not follow that, if such evidence is excluded for one purpose, it must be excluded for all purposes. It is enough to deter illegal police activity if the government is prohibited from using evidence obtained by such activity to prove its direct case. In view of this adequate penalty, to deny to the government the use of Curry's statement to impeach his contrary testimony at trial would be an unnecessary impediment to the search for truth.

"We think that the Supreme Court's decision in Walder is in no way modified by the subsequent decision in Mapp. In addition, we find the justification for letting a defendant testify without cross-examination as to collateral matters which can be reliably impeached no greater where the suppressed evidence is an admission made in the absence of counsel guaranteed by the Sixth Amendment. It is true that, if a prior admission were found to be unconstitutionally coerced, the substantial possibility that the admission is no more reliable than the contrary testimony of the accused at trial should lead a court to proceed with caution in permitting its use for impeachment purposes. See People v. Underwood, 61 A.C. 94 [61 Cal.2d 113] 37 Cal.Rptr. 313, 389 P.2d 937 (Sup. Ct.1964). But where, as here, there is no good reason to believe that a prior inconsistent statement was not accurate and voluntary, we find the Walder principle controlling."

On the other hand, in this very case, Judge Keating of the New York Court of Appeals, in his dissenting opinion in which Judge Fuld concurred, was of the view that the decision of the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) rendered the Walder doctrine of doubtful validity.[4] Inasmuch as his view is well expressed in that opinion, no purpose would be served by further discussion.

■ This court, however, is persuaded by the reasoning of the Second Circuit Court of Appeals in United States v. Curry, supra, and adheres to that view. Moreover, even assuming that the rationale of Miranda v. State of Arizona, supra, may have affected the validity of the Walder doctrine, there is no reason to believe that such a change would differ in its retroactive application. See Johnson v. State of New Jersey, 384 U. S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Accordingly, the application is denied.

A certificate of probable cause for appeal is granted.

■ Permission to appeal in forma pauperis is denied with the qualification that the relator may file with the Clerk of the United States District Court, United States Courthouse, Buffalo, New York, a notice of appeal without the payment of filing fees.

This denial does not prevent the relator from applying directly to the Court

4. People v. Kulis, 18 N.Y.2d 318, 323–324, 274 N.Y.S.2d 873, 875–876, 221 N.E.2d 541 (1966).

of Appeals for the Second Circuit, United States Courthouse, Foley Square, New York City, for permission to prosecute an appeal in forma pauperis.

So ordered.