THE STATE OF OHIO, APPELLEE, *v.* BUTLER, APPELLANT.

(No. 68-623—Decided July 9, 1969.)

**56**

*Mr. Melvin G. Rueger,* prosecuting attorney, and *Mr. Robert K. Sachs,* for appellee.

*Mr. Paul H. Tobias,* for appellant.

SCHNEIDER, J. Appellant raises two significant constitutional questions in this appeal: First, whether a 22-month delay between preliminary hearing and indictment denies an accused his right to a "speedy trial." under the Ohio and United States constitutions. Second, whether in cross-examination of a defendant the prosecutor may use prior inconsistent statements of the defendant, made to police without *Miranda* warnings, in order to impeach his credibility?

The law of Ohio is that the right to a speedy trial is not self-executing. Affirmative action on the part of an accused in the nature of a demand to be tried is necessary

to invoke the constitutional protection. *Partsch* v. *Haskins* (1963), 175 Ohio St. 139; *Crider* v. *Maxwell* (1963), 174 Ohio St. 190; *State* v. *Cunningham* (1960), 171 Ohio St. 54; *Ex parte McGehan* (1872), 22 Ohio St. 442.

The majority of jurisdictions are in accord with Ohio:

"It has been held generally that an accused is not entitled to a discharge for delay in bringing him to trial unless it appears that he resisted postponement, demanded a trial, or made some effort to procure a speedier trial than the state accorded him. . . ." Annotation, 57 A. L. R. 2d 302, 326.

We find no evidence in the record that appellant demanded a trial or inquired as to the status of his case. He was not incarcerated but was free on bond during the entire 22-month delay. This belies indigency, which is not urged. During this time he could have employed counsel, contacted witnesses and prepared to prove his innocence. He suffered none of the incapacities or disadvantages of an accused who must await trial delays while incarcerated. It is claimed that he suffered the anxiety and suspicion of one who must bear an untried accusation of crime. Cf. *People* v. *Prosser* (1955), 309 N. Y. 353, 130 N. E. 2d 891. However, this posture is defeated by lack of any action on his part to ascertain the status of the charge against him.

Appellant's right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution is no broader than under the Ohio Constitution. The United States Supreme Court extended the Sixth Amendment guarantee to state trials in *Klopfer* v. *North Carolina* (1967), 386 U. S. 213. That reasoning supports our position here. In *Klopfer,* the accused affirmatively demanded trial. He filed a motion with the court to ascertain when the state intended to bring him to trial, and demanded that the charge pending against him be permanently concluded. The actions of appellant in this case do not even remotely resemble those of Klopfer. Accordingly, we find no violation of the appellant's Sixth and Fourteenth Amendment right to speedy trial.

We pause to stress, however, that the reason for de-

lay in trial here was a clerical error. If the prosecutor had used the delay, as in *Klopfer* v. *North Carolina, supra,* to indefinitely postpone prosecution and place the accused under curtailment of his liberty and under fear of revived prosecution, we would not hesitate to condemn the procedure. The delay here is conceded to have been caused by the oversight of the clerk of court and the failure of the accused to assert his right.

Appellant's second contention is that the prosecution violated his Fifth Amendment right against self-incrimination by using statements of his which were made to police during in-custody interrogation with no warning of his right to silence or to counsel. The questioning occurred after arrest, on November 20, 1965, which was prior to the United States Supreme Court decision in *Miranda* v. *Arizona* (1966), 384 U. S. 436. It was held there that the prosecution's use of statements of an accused, made to police without prior warnings of his rights to remain silent, to counsel and appointed counsel if indigent, was a violation of the accused's Fourteenth and Fifth Amendment right against self-incrimination. *In Johnson* v. *New Jersey* (1966), 384 U. S. 719, the court held that the rule of *Miranda* applied to all trials commenced after its date of announcement, June 13, 1966. The delayed trial in the instant case occurred on May 15, 1968, making *Miranda* applicable.

The appellant took the stand and, on cross-examination by the prosecution, he made assertions as to the facts surrounding the crime. A recorded statement appellant made to a detective after arrest was then read to him to show a prior inconsistent statement.* Counsel objected, but

---

*In the prosecutor's cross-examination of defendant, the following questions and answers occurred:

"Q. And, when you pulled up there, that jack handle that you used to hit Mrs. Butler [*sic*] with, that was your jack handle wasn't it?

". . .

"A. No.

". . .

"Q. That didn't come out of your car? A. It did not.

"Q. You took it with you when you left?

the court allowed the statement to be used as evidence to impeach the witness' credibility. Appellant contends that this use of the statements, made without cautionary warnings, violated his Fifth Amendment rights as defined by *Miranda* v. *Arizona, supra* (384 U. S. 436).

We cannot agree. First, the statements used by the

"...

"A. Not that I can recall, I didn't."

The following questions were then asked, to which defendant's counsel objected.

"Q. On November the 20th, 1965, at 8:40 a. m. in the Crime Bureau at City Hall in the city of Cincinnati, you sat down and you had a conversation with detective Hillman, isn't that correct? Yes or no. A. . . . Yes.

"Q. And that conversation was recorded, wasn't it? A. I don't know that. . . .

"Q. Do you recall this question being asked and this answer given: 'Now, Joe, I would like to ask you in regard to this tire tool or tire iron or whatever part of the tire jack this was; do you know what happened with this after you struck this woman and you jumped in your car and ran?'

"...

"Mr. Tobias [defendant's attorney]: Objection. . . .

"...

"The Court: I don't think the decisions go that far, on questions of impeachment. This is purely impeachment, not to determine guilt or innocence, but impeachment only.

"...

"The Court: . . . That is all he has asked him. Didn't you make a statement such and such. It has nothing to do with the guilt or innocence of this defendant.

"...

"The Court: You may proceed . . . Mr. Prosecutor.

"...

"Q. During this conversation was this question asked and was this answer given by you: 'Question: Now, Joe, I would like to ask you in regard to this tire tool or tire iron or whatever part of the tire jack this was; do you know what happened with this after you struck this woman, and you jumped in your car and ran? Do you know what happened to the tire tool? Answer. I believe I was running, I just drug it on back to the car. I just, I just drug it on back, and I just thrown it on the floor.' Was that question asked and was that answer given?

"...

"A. It might have been. I couldn't swear to it."

prosecution were not offered by the state as part of its direct case against appellant, but were offered on the issue of his credibility after he had been sworn and testified in his own defense. Second, the statements used by the prosecution were voluntary, no claim to the contrary having been made.

The distinction between admissibility of wrongfully obtained evidence to prove the state's case in chief and its use to impeach the credibility of a defendant who takes the stand was expressed in *Walder* v. *United States* (1954), 347 U. S. 62, 65:

"It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. . . ."

Those words of Justice Frankfurter were uttered in regard to evidence inadmissible under the Fourth Amendment exclusionary rule. In the case of the Fifth Amendment, even greater reason exists to distinguish between statements of an accused used in the prosecution's direct case and used for impeachment in cross-examining the accused when he takes the stand. We must not lose sight of the words of the Fifth Amendment: ". . . nor shall be compelled to be a witness against himself. . . ." This is a privilege accorded an accused not to be compelled to testify, nor to have any prior statements used by the prosecution to prove his guilt. We cannot translate those words into a privilege to lie with impunity once he elects to take the stand to testify. Under our ruling in *State* v. *White* (1968), 15 Ohio St. 2d 146, the accused could have "discovered" recorded statements made to the police. This is as much protection against a faulty memory as any defendant is entitled to.

We do not believe that the case of *Miranda* v. *Arizona*, *supra* (384 U. S. 436), dictates a conclusion contrary to ours. In *Miranda*, the court indicated that statements of

a defendant used to impeach his testimony at trial may not be used unless they were taken with full warnings and effective waiver. (384 U. S., at 477.) However, we note that in all four of the convictions reversed by that decision statements of the accused, taken without cautionary warnings, were used by the prosecution as direct evidence of guilt in the case in chief.

We believe that the words of Chief Justice Marshall regarding the difference between holding and dictum are applicable here.

"It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." *Cohens* v. *Virginia* (1821), 19 U. S. (6 Wheat.) 264, 399.

The court, in *Miranda,* was not faced with the facts of this case. Thus, we do not consider ourselves bound by the dictum of *Miranda.*

The "linch pin" (as Mr. Justice Harlan put it, 384 U. S. at 513) of *Miranda* is that police interrogation is destructive of human dignity and disrespectful to the inviolability of the human personality. In the instant case, the use of the interrogation to impeach the voluntary testimony of the accused is neither an assault on his dignity nor disrespectful of his personality. He elected to testify, and cannot complain that the state seeks to demonstrate the lack of truth in his testimony.

Finally, we emphasize that the statements used by the prosecution were voluntarily made. The decision in *Miranda* did not discard the distinction between voluntary and involuntary statements made by an accused and used

by the prosecution. *Davis* v. *North Carolina* (1966), 384 U. S. 737. Lack of cautionary warnings is one of the factors to consider in determining whether statements are voluntary or not. However, appellant here has never claimed that the statements used to impeach were involuntary. Thus, we assume they were voluntary, and hold that voluntary statements of an accused made to police without cautionary warnings are admissible on the issue of credibility after defendant has been sworn and testifies in his own defense. Accord, *People* v. *Kulis* (1966), 18 N. Y. 2d 318, 221 N. E. 2d 541; *United States, ex rel. Kulis,* v. *Mancusi* (W. D. N. Y. 1967), 272 F. Supp. 261, affirmed, 383 F. 2d 405 (C. A. 2, 1967); certorari denied, 389 U. S. 943. Had the case been tried to a jury and not the court, explicit instructions to consider the statement only on the matter of credibility and not as to guilt would have been necessary. Cf. *Spencer* v. *Texas* (1967), 385 U. S. 554.

*Judgment affirmed.*

TAFT, C. J., GRAY, MATTHIAS, O'NEILL and HERBERT, JJ., concur.

DUNCAN, J., dissents.

GRAY, J., of the Fourth Appellate District, sitting for ZIMMERMAN, J. Because of the inability, "by reason of illness," of JUSTICE CHARLES B. ZIMMERMAN "to hear, consider and decide" this cause, JUDGE GRAY of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE ZIMMERMAN, and JUDGE GRAY did so and heard and considered this cause prior to the decease of JUSTICE ZIMMERMAN on June 5, 1969.

DUNCAN, J. I concur in paragraph one of the syllabus and dissent from paragraph two of the syllabus and from the judgment.

The use of statements made by the defendant for im-

peachment without the warnings set forth in *Miranda* v. *Arizona*, 384 U. S. 436, having been given, is reversible error.

In *Miranda*, Chief Justice Warren stated, at page 476:

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of *any statement made by a defendant*. No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, *no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.'* If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. *In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication.* These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. * * *" (Emphasis supplied.)

This *specific* reference to impeachment, I believe, forecloses the use of defendant's in-custody statement in the instant case.

The United States Court of Appeals for the Second Circuit, in *United States* v. *Fox*, 403 F. 2d 97, arrived at a decision contrary to that arrived at by the majority in this case. Judge Bryan, at page 102, stated:

"These pronouncements by the Supreme Court may be technically dictum. But it is abundantly plain that the court intended to lay down a firm general rule with respect to the use of statements unconstitutionally obtained from a defendant in violation of *Miranda* standards. The rule

64

prohibits the use of such statements whether inculpatory or exculpatory, whether bearing directly on guilt or on collaterial matters only, and whether used on direct examination or for impeachment."

See, also, *Groshart* v. *United States*, 392 F. 2d 172; Kent, *Miranda* v. *Arizona*—The *Use of Inadmissible Evidence for Impeachment Purposes*, 18 Case W. Res. L. Rev. 1177; 36 U. Cin. L. Rev. 738 (1967); 42 N. Y. U. L. Rev. 772.

I would reverse.