The State of Ohio, Appellee, v. Gettys, Appellant

(No. 13-75-15—Decided March 30, 1976.)

*Mr. James D. Supance,* for appellee.
*Mr. Richard A. Kahler,* for appellant.

*Per Curiam.* This is an appeal from defendant's conviction and sentence for a violation of R. C. 3719.41 (possession of an hallucinogen) on July 30, 1973. The case was originally tried on January 16, 1974, and the defendant was thereafter convicted and sentenced. However, in an appeal to this court that conviction was reversed and on July 29, 1974, the judgment entry of reversal, remanding the case for further proceedings, was filed with the clerk. A second trial was thereafter held on July 24, 1975. In the interim, the trial court had adopted a rule providing for videotape trials (that is: a presentation to the jury of evidence by means of prerecorded testimony of witnesses taken in the absence of the jury before it was convened or selected, and not merely the recording of the trial by videotape in place of or by supplementing the normal stenographic recording process).[2] The second trial was conducted in accordance with this rule and again resulted in a conviction and sentence. It will be noted that the defendant has not been imprisoned at any time during the course of these proceedings, and that the sentence (which called for a fine and a suspended sentence of 30 days) has been stayed pending appeal.

The defendant appeals asserting four assignments of error, the first two of which concern portions of the court's charge to which an objection was made; the third concerns the constitutionality of a videotape trial of the kind here conducted; and the last concerns the constitutional issue of speedy trial, the defendant asserting that the court erred in overruling a motion to discharge made on July 16, 1975.

The first three alleged errors, if found to exist and to be prejudicial, would require simply a new trial. The fourth assignment, however, would require a reversal and discharge of the defendant and is therefore the more basic assertion of error. For this reason we will discuss this assignment of error first.

I. Assignment of Error No. 4 states: "The trial court erred in overruling defendant-appellant's motion to discharge him for the reason he was denied a speedy trial."

---

[2] See Criminal Rule 22.

The appellant first cites us to a Rule of Superintendence of the Supreme Court requiring all criminal cases to be tried within six months of the date of arraignment and providing for reporting to the Chief Justice of any cases of non-compliance (Sup. Rule 8[B]).

It will be noted that whereas rules of procedure adopted by the Supreme Court require submission to the legislature, rules of superintendence are not so submitted and, hence, are of a different category. They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants. Similar considerations concern the additional citation to the Rules of Superintendence for Municipal and County Courts (Rule 5). See Constitution of Ohio, Section 5, Article IV.

We are cited further to R. C. 2945.71.(B), which reads:

"A person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial:

"(1)Within forty-five days after his arrest or the service of summons, if the offense charged is a misdemeanor of the third or fourth degree, or other misdemeanor for which the maximum penalty is imprisonment for not more than sixty days * * *."

It will be noted that this section is specifically directed to an original trial and was not in effect at the time of the first trial of this cause. It requires a trial within a specified period after arrest or service of summons. It is, on reversal and retrial, impossible to comply with these requirements. Had the legislature wished to have established a maximum time before retrial it could have so stated. It did not and it is not the function of this court to fill the omission by what would amount to judicial legislation. The statute has no application.

A second reason for this conclusion exists. This court has determined on previous occasions that the requirements of R. C. 2945.71, *et seq.*, are governed by the provisions of Section 3 of H.B. 511. (See R. C. 2901.01 and footnote thereunder in Page's Ohio Revised Code.)

" * * * Persons charged with an offense, other than a capital offense, committed prior to the effective date specified in Section 4 of this act shall be prosecuted under the law as it existed at the time the offense was committed."

We have held, with regard to the time within which trials must take place, that the law as it existed at the time the offense was committed governs and that R. C. 2945.71 is only applicable to crimes committed after January 1, 1974. (*State* v. *Smith*, unreported, Court of Appeals for Allen County, No. 1-74-34, motion to certify overruled February 21, 1975.) The offense here involved was committed on July 30, 1973; hence, the section is not applicable.

Former R. C. 2945.71 applied only to persons detained in jail and this defendant was not incarcerated. Former R. C. 2945.72 pertained to a person held by recognizance without trial but is applicable to the first trial not a retrial. Furthermore, we can find in the record before us no indication the defendant was, in fact, held under recognizance.

We find and are cited to no further appropriate statutory requirements. In the case of *Yule* v. *State* (1914), 16 Ariz. 134, 141 P. 570, cited by appellant, a specific statute was involved; hence, the principle of that case is not here applicable.

We therefore turn to the constitutional requirements for a speedy trial contained in the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, upon which appellant relies, in the absence of specific statutory requirements.

In *State* v. *Bound* (1975), 43 Ohio App. 2d 44, 47, the court states:

"Since there has been no statutory violation the burden is upon defendant to demonstrate that his constitutional right to a speedy trial has been denied. In passing upon that question the trial court must take into consideration the four factors of length of delay, reason for delay, assertion of the right, and resulting prejudice. *Barker* v. *Wingo* (1972), 407 U. S. 514. It is not essential that the defendant affirmatively demonstrate prejudice. *Moore* v. *Arizona* (1973), 414 U. S. 25. None of the factors is a necessary condition to the finding of a deprivation of the right.

" ' 'Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.' *Barker* v. *Wingo, supra.*"

The facts pertinent to these four factors must be gleaned from the record before us. The length of delay is clearly evident. The preparation of the case on retrial should involve little reason for delay. The issues have been explored fully once by all parties. Moreover, it is apparent that on the date of the remand for a new trial (July 29, 1974) a period of almost exactly one year had already expired since the date the offense was committed (July 30, 1973). Despite these considerations, no trial was held until July 24, 1975, or again almost exactly one year more. It must be noted that the defendant did request a continuance of a hearing scheduled on September 3, 1974. However, a continuance for the purpose noted would be, or should be, relatively short. The record reveals that a hearing was held on December 12, 1974, but such was devoted solely to a motion on the videotape proceedings and the objection thereto. When the time for trial arrived, the hearing was adjourned because of noise. However, the defendant raised no objection to a continuance and so indicated to the court. The court indicated the trial might be held the following day but nothing more appears until the filing of defendant's motion for discharge on July 16, 1975, and the ultimate trial on July 24, 1975. It may be concluded on the record before us that an inordinate time intervened between the order of remand and the ultimate trial date.

The second factor to be considered is the reason for the delay. A short period may be attributed to the defendant's request for a continuance. However, there is no apparent reason given by the court for the delay. It may be inferred perhaps that it was due to the new rule for the use of videotape in a criminal trial. This is obviously an experimental use of videotape and its use in the case of an alleged offense already well over one year old and in a case where the issues and facts have been once examined

is of dubious merit. The bulk of the delay must be attributed not to the defendant but to the court.

The third factor concerns the assertion of the right. Here the defendant clearly is at fault. At no time from the judgment entry of reversal to about a week prior to trial do we find in the record before us any request for trial or objection to the delay. As we have noted, on July 16, 1975, a request for discharge was filed but on July 24, 1975, the trial was held. It must be noted further that when the case was originally set for pretrial the defendant asked for a continuance, and on December 12, 1974, instead of proceeding to trial the defendant stated he had no objection to a continuance. At no point was there any objection made to the time of trial, objections being directed solely to the mode of trial—*i. e.*, in the videotape procedure.

Finally, we have the element of prejudice. The defendant has never been in jail or on recognizance. He asserts that two corroborating witnesses were unavailable. While this may be true, the unavailability is not necessarily established as being caused by the delay or that the witnesses would have been available earlier.

It thus becomes necessary to balance the elements. In summary the delay is inordinate and probably without any substantial reason. However, this is balanced by the failure of the defendant to raise any objection or to demand a trial until shortly prior to the time trial was held. This assertion of his right has, in Ohio, been a vital and highly important element. In *State* v. *Butler* (1969), 19 Ohio St. 2d 55, the first paragraph of the syllabus states:

"An accused is not entitled to a discharge for delay in bringing him to trial unless it appears that he resisted postponement, demanded a trial, or made some effort to procure a speedier trial than the state accorded him."

The court was there dealing with the constitutional problems, stating at page 56 of the opinion:

"The law of Ohio is that the right to a speedy trial is not self-executing. Affirmative action on the part of an accused in the nature of a demand to be tried is necessary to invoke the constitutional protection. * * * "

This element of the assertion of the right is in our

opinion determinative here and sways the balance against appellant's contention his right to a speedy trial has been violated. He was not incarcerated. He was represented by counsel. He did not demand an earlier trial and by inaction, in effect, waived any right to a trial at a time earlier than that accorded by the state.

The assignment of error is not well taken.

II. Assignment of Error No. 3 states: "By local rule of practice and procedure promulgated November 29, 1974, the trial court unlawfully, prejudicially, unconstitutionally, unfairly and improperly compelled defendant-appellant over his repeated objections, to have a jury trial wherein all evidence was previously videotaped and then presented to the jury when called and selected."

Under Section 5, Article IV of the Ohio Constitution, the power of general superintendence over all courts is vested in the Supreme Court and under certain conditions it shall also prescribe rules governing practice and procedure. It is stated, also: "Courts may adopt additional rules governing local practice in their respective courts which are not inconsistent with the rules promulgated by the supreme court." See, also, Civ. R. 83; Crim. R. 57; M. C. Sup. R. 18. Pursuant to this the Municipal Court of Tiffin adopted a rule reading as follows:

"In accordance with Rule 22 of the Ohio Rules of Criminal Procedure all serious criminal proceedings shall be recorded.

"In petty offense cases all waivers of counsel required by Rule 44(B) shall be recorded and if requested by any party all proceedings shall be recorded.

"Any proceedings, except criminal and traffic jury trials, may be recorded in shorthand or stenotype, or by any other adequate mechanical, electronic or video recording device.

"All criminal and traffic jury trials shall be recorded by a video recording device, when available and operational, prior to its presentation to the jury. Jury selection procedures, opening statements of counsel, objections, arguments of counsel usually held outside the hearing of the jury, side bar arguments and conferences, hearings in

chambers, and closing arguments, may be recorded other than by a video recording device in criminal and traffic jury trials. After the video taping of the trial and the elimination by the court of objectional material and the rulings thereon, the court shall call the jury. The court and counsel shall select the jury and, where applicable, an alternate. Counsel may make opening statements. The jury shall then view the video recorded trial proceedings, as edited by the court. At the end of the viewing of the video recorded trial, and where applicable, a view of the scene, counsel may make closing arguments. Exhibits admitted into evidence shall be available to the jury while it deliberates.

"If a case is appealed, the video taped proceedings together with the other recordings shall be available for presentation by counsel as the transcript.

"Upon making a suitable deposit with the Clerk, either party in a civil jury trial may request a videotape record. The cost of record shall be taxed as costs. * * *

"Dated: November 29, 1974."

The crux of the problem presented by this rule is contained in the first sentence of the fourth paragraph which calls for the prerecording of all testimony by videotape prior to its presentation to the jury (and, as appears later, even prior to the selection of the jury). Irrespective of the many facets of appellant's objections, the one which is determinative is constitutional. In Section 10, Article I of the Ohio Constitution, immediately following the provision for a speedy trial in the county of the offense, appears this further statement:

" * * * but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court."

A deposition, in the sense here pertinent, is defined as "testimony taken down in writing under oath or affirmation in reply to interrogatories before a competent officer to

replace the viva voce testimony of the witness or to supply necessary information for pretrial procedure." Webster's Third New International Dictionary (1971).

This is the traditional meaning of the word and the customary usage in trial procedure. There is then no difference between a videotape recording before trial and a traditional deposition in its purpose or in its creation. The sole distinction lies in the added feature that there is a visual and an audio recording instead of a written recording. In constitutional terms, we do not believe this distinction to be significant. The constitutional purpose was to limit the use of such substitute modes of presenting evidence in criminal trials to those strictly limited situations of witnesses "whose attendance cannot be had at a trial." In all other cases, it is contemplated that the witnesses will be physically present and testify before the jury after its selection and in the course of the trial proper. See, also, Criminal Rule 15(A) and (F).

The rule cited above and adopted by the Municipal Court would permit the violation of this constitutional principle. Before the videotapes were presented to the jury in the present case (assuming that a visual-audio transcript may be properly substituted for the traditional written deposition), there was no affirmative showing or representation to the court that the attendance of the witnesses whose testimony was so presented could not be had at the trial. The defendant had objected to the use of videotape prior to trial and this objection was renewed at trial, on the specific ground of a violation of this constitutional provision. The court was in error in permitting the use of the videotapes under these circumstances; the objection should have been sustained, to the extent indicated; and the assignment of error is therefore well taken and the error prejudicial. Although there are other constitutional problems involving the constitutional concept of "trial" and the right of confrontation, the foregoing determination is dispositive of the case. As to the constitutionality of statutes, see *Greenhills Home Owners Corp.* v. *Village of Greenhills* (1966), 5 Ohio St. 2d 207.

III. Assignment of Error No. 2 reads: "The trial

court erred in his charge to the jury when the definition of reasonable doubt as found in R. C. 2901.05, effective January 1, 1974, was applied and used rather than that definition contained in R. C. 2945.04.''

The latter section, which was in effect when the offense was committed, required that the court read to the jury the following definition of ''reasonable doubt'':

''Reasonable doubt is defined as follows: 'It is not a mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.' ''

However, the court defined the term in the following language:

''Reasonable doubt is present when after you have carefully considered and compared all the evidence you cannot say you are firmly convinced of the truth of the charge. Reasonable doubt is the doubt based on reason and common sense.

''Reasonable doubt is not mere possible doubt because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt.

''Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.''

R. C. 2901.05, as effective January 1, 1974, still required that the definition of reasonable doubt be read to the jury but defined the term in the form presented by the trial court. There is no fundamental difference in meaning between the two. In the committee comment, the following appears:

'' * * * The definition of reasonable doubt combines elements of the former Ohio and existing federal definitions, restylized for greater ease in understanding.''

The modification is not one of substance but is an effort to promote clarity.

In *Beck* v. *State* (1935), 129 Ohio St. 582, the court stated in the syllabus:

"In charging a jury in a criminal case, failure to read the definition of reasonable doubt as set forth in Section 13442-3, General Code [thereafter Revised Code 2945.04 now repealed], is not reversible error where the court charges the jury on reasonable doubt substantially in accordance with that section."

The court stated that the "error complained of is technical rather than prejudicial." A similar conclusion guides our considerations here. The assignment of error is not well taken.

IV. Assignment of Error No. 1 states: "The trial court erred in his charge to the jury relating to defendant's overcoming the prosecution's prima facie evidence and in instructing the jury that defendant had the burden of proving he had control of an hallucinogen without intent to produce hallucinations or illusions."

We must here first note the specific objection made by appellant at the close of the court's instruction. He objected to "that portion of the court's charge which stated in effect that a defendant has the burden of proving a certain defense. The defendant objects to such a statement and requests the court to instruct the jury that defendant has no burden of proving anything."

Referring then to the charge the court stated in defining the meaning of the words "to control an hallucinogen": "To control means to exercise directing influence over an object. To control means to regulate or to have power over an object or a thing. The burden of proving the defense of having control of marijuana without intent to produce hallucinations or illusions is upon the defendant. He must establish sufficient defense by a preponderance of the evidence." Also, he stated: "If the defendant fails to establish the defense of control of marijuana without intent to produce hallucinations or illusions the state still must prove all of the elements of the crime charged by proof beyond a reasonable doubt."

While the first portion of the charge is erroneous in that there is no burden of proof on the defendant (the burden of going forward with the evidence is placed upon him

by the presumption as to intent, but there is no affirmative defense involved); nevertheless, the second quotation above clearly places the burden on the state to prove all elements including that of intent. The jury therefore had two differing concepts to guide it: (1) that the defendant has the burden of proving by a preponderance of the evidence that he did not control with the intent to produce illusions or hallucinations, and (2) that the prosecutor had the burden of proving this element of intent beyond a reasonable doubt. We have no way of knowing which instruction the jury in fact followed.

In 4 Ohio Jurisprudence 2d 280, Appellate Review, Section 998, it is stated, based upon numerous cases there cited:

"Where both correct and incorrect instructions upon the same subject have been given to the jury, and where from the whole charge it is uncertain which rule the jury adopted, the judgment should be reversed. This rule has been applied to require reversal in many civil cases, and it has been applied with the same result in criminal cases. No presumption arises, in such cases, that the jury has followed the correct instruction rather than the incorrect one, or that they were able to determine which was the correct one and the one which they should follow, either in civil cases or in criminal proceedings."

This is a material element and we cannot definitively say, taking the charge as a whole, the jury was not misled. The assignment of error is well taken and the error prejudicial.

For the reasons stated, the judgment of the trial court is reversed and this cause is remanded for further proceedings pursuant to law.

*Judgment reversed.*

COLE, P. J., MILLER and GUERNSEY, JJ., concur.