OPINION
{¶ 1} On March 7, 2006, Joseph W. Huber (Appellant) was as caught with a suitcase brimming with thousands of narcotic pain-reliever and analgesic tablets-methadone, hydrocodone, oxycodone, fentanyl patches, and acetaminophen with codeine. He was convicted on five counts of controlled substance possession in back-to-back *Page 2 
trials (Huber I, No. 06-CR-509, and Huber II, No. 06-CR-674). The prosecutor's misidentification of the fentanyl patches in the original indictment required the state to reindict Mr. Huber, prompting the second trial three months later. The two trials spawned two appeals (this one and State v. Huber, Clark App. No. 07-CA-88), which we declined to consolidate.
 {¶ 2} This is the appeal from the second trial, Huber II, where the jury found him guilty on one count of possessing fentanyl patches, and the trial court sentenced him to an eight-year prison term, running concurrent to the sentence in Huber I. Mr. Huber assigns seven errors, which we will address out of order.
 {¶ 3} The second assignment of error alleges, like the first assignment of error in Huber I, the trial court erred by overruling his motion to suppress evidence. He reiterates his contention that the officer's search of the suitcase violated his Fourth Amendment rights because it was done without a warrant and failed to satisfy an exception to the warrant requirement. The trial court summarily overruled the motion, finding it identical to the motion filed in Huber I, which had already been addressed, and finding the motion here was filed untimely. In our review of the appeal from Huber I, we affirmed the constitutionality of the search, and as Mr. Huber presented the trial court with nothing new to consider, we will adhere to our decision there. Still, to set the stage, we will quote our statement of the facts and our conclusion.
 {¶ 4} "The only evidence offered at the suppression hearing was the testimony of Louis Turner, a sergeant in the Springfield Police Department who was present at the search. While the trial court did not make express findings of fact, Mr. Huber did not quarrel with the substance of his testimony. Here is what Sergeant Turner said. *Page 3 
 {¶ 5} "In the early evening of March 7, 2006, in Springfield, Ohio, he and Detective Scott Woodruff sat in an unmarked police car and watched a suspected drug house on North Belmont Ave. The police had received several complaints about this house, the majority from Major Rusty Garman of the Clark County Sheriff's Department. Major Garman could see the house from the nearby bingo hall, where he worked an extra-duty job. For several weeks, he had relayed to the Springfield police his suspicion, based on his observations, that this house was a hub of drug commerce. Major Garman reported he often watched a person walk into the house and then saw the same person walk out only a minute or so later. In other telling observations, said Sergeant Turner, he `said that they would leave with a gym bag or a suitcase and sometimes walk over the the Panama Club, which is across the street, and stay 10, 15 minutes and come back.' (Tr. 31). Sergeant Turner said he credited Major Garman's suspicions because of the latter's experience. So Turner and Woodruff watched the house and saw activity that confirmed Garman's observations and suspicions.
 {¶ 6} "Around 6pm, they watched a 1992 Chevy pickup truck pull near the house. The driver got out and walked into the house empty handed. Consistent with the pattern they, and Major Garman, had seen, the driver walked out a few minutes later carrying a suitcase, which he carried in a way that suggested it was heavy. The two officers watched as the driver swung the suitcase into the Chevy's open bed, got in the cab, and drove off; they decided to follow. `[W]hat caused you to follow him?', asked defense counsel. (Tr. 31). `[T]he gentleman leaves the house with a suitcase and throws it in the back of the truck,' Turner replied, `there could be drugs in [there].' Id.
 {¶ 7} "They ran the Chevy's plates as they followed, and they discovered John *Page 4 
Huber was its registered owner and also the subject of an outstanding arrest warrant. Although neither officer knew him, they knew a man drove the truck, so they flipped on their red lights.
 {¶ 8} "After the truck stopped, Sergeant Turner approached the passenger, Detective Woodruff the driver. When asked their names, both men replied, `Joe Huber,' but the passenger quickly corrected himself and said his was John Huber. Turner informed John of the arrest warrant and asked him to step out of the truck, where he arrested and handcuffed John. Searching him, Turner reached into his front pants-pocket and pulled out a small packet that contained a white powder, which he suspected (and later confirmed) was cocaine. Meanwhile, Detective Woodruff was busy with the driver, who, like John, was being combative and argumentative. Woodruff learned the driver's name was Joseph Huber, and Joseph was John's nephew.
 {¶ 9} "Turner, his hands full with John, could not testify in detail about Woodruff's encounter with Joseph, but he did know that it was at some point after he had arrested John when Woodruff opened the suitcase. Inside they saw pill bottles and thousands of pills. Woodruff immediately arrested Joseph, who, Turner testified, likely would not have been arrested but for this discovery.
 {¶ 10} "Mr. Huber contends that when Detective Woodruff opened the suitcase Woodruff violated his Fourth Amendment rights because the officer did not have a search warrant and the search was not justified by an exception to the warrant requirement." State v. Huber, Clark App. No. 07-CA-88.
 {¶ 11} We concluded: "Here, three experienced officers believed the house on North Belmont Ave. was a likely hub of drug-related commerce. Turner knew Major *Page 5 
Garman had watched people lug suitcases, and other bags, from the house. They saw Mr. Huber enter the house empty-handed and exit only a few minutes later with a heavy suitcase in hand; they also discovered cocaine on his uncle, the passenger, which fact alone can constitute probable cause to search a vehicle. See, e.g., Wyoming v. Houghton
(1999), 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (hypodermic needle found in driver's pocket plus his admission that he used it to take drugs gave officer probable cause to search vehicle for contraband);U.S. v. Johnson (C.A.7, 2004), 383 F.3d 538, 545-546 (stating that officer's `discovery of a banned substance (drugs) on [defendant's] person clearly provided him with probable cause to search'). The trial judge, resident in Springfield, concluded that Sergeant Turner and Detective Woodruff, both local police officers, had a reasonable basis for believing the suitcase in the Chevy's bed was loaded with drugs. We cannot say that as a matter of law the trial judge erred in his conclusion." Id.
 {¶ 12} We overrule the second assignment of error.
 {¶ 13} Next, the third assignment of error alleges ineffective assistance of counsel because counsel failed to file the motion to suppress on time. But because we conclude here that the search of the suitcase was constitutional, even if counsel's conduct were ineffective, Mr. Huber suffered no prejudice from it. Therefore, we overrule the third assignment of error.
 {¶ 14} The first assignment of error alleges the trial court erred by overruling Mr. Huber's motion to dismiss the possession charge on speedy-trial grounds. The trial court should have dismissed it, he contends, because the 16-month delay between the original indictment, May 2006, and trial, October 2007, violated his right to a speedy trial *Page 6 
under the Sixth Amendment to the United States Constitution, Article I, Section 10, of the Ohio Constitution, and Section 2945.71 of the Revised Code.
 {¶ 15} In his first appeal, he argued the same with respect to the charges in Huber I, although there the delay was fourteen months, but we affirmed. We concluded that by the time he first asserted his constitutional rights on the day of trial he had waived them. We also concluded that he had no ground to assert his statutory right to a speedy trial. The 270-day period in R.C. 2945.71 was superseded by the 180-day period in R.C. 2941.401, because when he was indicted he was already serving a four-year prison sentence on an unrelated robbery conviction. See State v. Stewart, Montgomery App. No. 21462,2006-Ohio-4164. But, the new period never began to run because Mr. Huber never requested the possession charges be addressed, which the statute says is a condition precedent.
 {¶ 16} Here, he asserted his speedy-trial rights for the first time a week before trial. Yet in the two months after his first trial ended, he filed many more motions, including one for discovery, for a bill of particulars, for a transcript of grand jury proceedings, and to suppress, and he requested (and was granted) a continuance on July 24, 2007, the day before the second trial was to be held and roughly a week after the first had ended. Also, on August 15, 2007, he asked the judge presiding over the case to recuse himself (which the judge did) alleging the judge had been "prejudiced and biased" toward him throughout.
 {¶ 17} The Ohio Supreme Court has said ones constitutional rights to a speedy trial must be timely asserted to avoid waiver, because they are not self-executing. See State v. Butler (1969), 19 Ohio St.2d 55, 56,249 N.E.2d 818. "An accused is not *Page 7 
entitled to a discharge for delay in bringing him to trial unless it appears that he resisted postponement, demanded a trial, or made some effort to procure a speedier trial than the state accorded him." Id. at paragraph one of the syllabus. Failing to request trial or object to the delay until a week before trial has been held too late. See State v.Gettys (1976), 49 Ohio App.2d 241, 246, 360 N.E.2d 735. He is the reason for the delay. The trial court was ready to go only a week after the first trial ended. The trial judge did not err by finding his constitutional rights to a speedy trial intact.
 {¶ 18} Mr. Huber made an oral motion to dismiss based on his statutory right to a speedy trial but not until after the prosecution had presented its case-in-chief. And he never asked that the charge be addressed. Thus, not only would he have no ground to assert his right under R.C. 2945.71, see State v. Trummer (1996), 114 Ohio App.3d 456,471, 683 N.E.2d 392 (stating that such a motion to dismiss must be made before trial begins), but, just like in his first appeal, he plainly has no ground under the governing R.C. 2941.401.
 {¶ 19} We overrule the first assignment of error.
 {¶ 20} The fourth assignment of error alleges the trial court erred by failing to declare a mistrial. Mr. Huber contends improper contact with one member of the jury resulted in a violation of his due process rights.
 {¶ 21} On the eve of the trial's first day, it came to the trial court's attention that the live-in girlfriend of a juror had watched the day's proceedings from the public gallery-including those the jury was not permitted to see. Upon identifying the woman, the trial court spoke directly to her, "I'm going to have to order that you not discuss this matter with whoever your spouse is. Can you abide by that?" (Tr. 220). "I sure can," she *Page 8 
replied. Id. Then before dismissing the jury, the court, observing the public nature of the trial, told them what it had said to the woman (the jury had been removed from the courtroom) and carefully admonished them not to discuss the case with anyone, neither friends nor family.
 {¶ 22} The next morning, on the record, the court inquired of the bailiff whether there were any reports of a breach of his admonition. "No," said the bailiff, adding he had already asked the woman if she had spoken to the juror about the case and she said she had not. The court then placed the woman under oath and asked her the same. "No," she said again. Satisfied, the court moved on, declining Mr. Huber's request to hold a Remmer hearing.
 {¶ 23} In Remmer v. United States, the Supreme Court held any private communication with a juror during a trial was presumptively prejudicial, and the state had the burden to prove otherwise. (1954), 347 U.S. 227,229, 74 S.Ct. 450, 98 L.Ed. 654. The Ohio Supreme Court agrees that aRemmer hearing must be held if the trial court learns of a "private communication, contact, or tampering * * * with a juror during a trial about a matter pending before the jury." State v. Johnson,112 Ohio St.3d 210, 246, 2006-Ohio-6404, quoting Remmer.
 {¶ 24} Here, though, there is no evidence the woman communicated, contacted, or tampered with the juror vis-a-vis Mr. Huber's trial. She simply watched a public trial in which the person she lived with served as a juror. Further, she denied under oath that she had talked with the juror about the trial. We share the trial court's ignorance of a rule that prevents a juror's family member or friend from attending a public trial simply because of her relationship to the juror; Mr. Huber has not enlightened us. *Page 9 
 {¶ 25} The fourth assignment of error is overruled.
 {¶ 26} The fifth assignment of error alleges the trial court erred by allowing Sergeant Turner and Detective Woodruff to testify about the other drugs they saw in the suitcase-the thousands of pills that were the subject of Huber I. He argues that evidence of the other drugs was irrelevant, and even if it were relevant, its probative value was substantially outweighed by its prejudicial effect. He does not, though, say precisely what this prejudicial effect might have been, and says only that the outcome of the trial would likely have been different had it not been admitted. The state contends the evidence was relevant to show he knew what was in the suitcase, that the Fenatyl patches were not merely hiding among clothing. The state further points to testimony that the pills "rattled" when the suitcase was carried. Such noise, contends the state, suggests he knew drugs were inside.
 {¶ 27} The relevancy standard is quite low: "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. While "[a]ll relevant evidence is admissible," generally speaking, Evid. R. 402, it is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid. R. 403(A). Of course, "[t]he admission or exclusion of evidence is a matter resting within the sound discretion of the trial court, and its decision in such matters will not be disturbed on appeal absent an abuse of that discretion." State v.Wilson, Montgomery App. No. 22120, 2008-Ohio-4130, at ¶ 14.
 {¶ 28} Although the trial court's rationale for admitting the testimony is not in the *Page 10 
record (the court held all sidebars off record), we cannot say the court abused its discretion were it to have believed the testimony made it ever-so-slightly more probable that Mr. Huber knew what was in the suitcase. And we doubt, which Mr. Huber does nothing to relieve, that the threatened prejudice was so great as to "substantially outweigh" the probative value. Regardless, he fails to show that he actually suffered prejudice by the court's admission of this testimony, so we conclude that if there were error, it was harmless. See Crim. R. 52(A).
 {¶ 29} We overrule the fifth assignment of error.
 {¶ 30} The sixth assignment of error alleges the trial court erred by overruling Mr. Huber's motion for acquittal. He argues, one, the evidence is legally insufficient to find him guilty and, two, the verdict was against the manifest weight of the evidence. His argument here is rooted in his claim that the prosecutor never proved he owned the suitcase. His mere possession of it, he argues, was not enough evidence for the jury to conclude he knew what was inside. There is simply no evidence that he "knowingly possessed" the suitcase's contraband contents, he concludes.
 {¶ 31} "A motion for acquittal under Crim. R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." State v. Tenace, 109 Ohio St.3d 255,2006-Ohio-2417, at ¶ 37. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, 574 N.E.2d 492. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the *Page 11 
trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus, 227 N.E.2d 212.
 {¶ 32} "A claim that a jury verdict is against the manifest weight of the evidence, on the other hand, involves a separate and distinct test which is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Scott, 101 Ohio St.3d 31, 2004-Ohio-10, at ¶ 32, quotingState v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 33} "Knowing possession" is an essential element of the offense, which must be satisfied before the jury could find Mr. Huber guilty. See R.C. 2925.11 (A) (stating the definition of the controlled-substance possession offense). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Of course, direct evidence of what a defendant knew at the time would be rather difficult to come by, which is why circumstantial evidence suffices.
 {¶ 34} Here, the jury heard testimony that three experienced police officers believed drugs were being bought and sold in the house on North Belmont Ave. It heard that Major Garman had watched as people exited the house carrying a duffle-bag or suitcase. It heard that the officers watched Mr. Huber walk into the same house empty-handed and walk out a minute later carrying a heavy suitcase. It heard that the officers opened the suitcase to discover not a few pills hidden among clothing but thousands of pills. It heard that the suitcase rattled noisily when carried. Finally, it heard that *Page 12 
Sergeant Turner found cocaine on Mr. Huber's uncle, the passenger and owner of the truck. From this evidence, the jury reasonably inferred that Mr. Huber was aware of the contraband contents of the suitcase. The sum of the evidence was a legally-sufficient ground on which the jury could find that he was aware of the drugs inside. And the jury did not clearly lose its way, nor did it create a manifest miscarriage of justice, so its finding is not against the manifest weight of the evidence.
 {¶ 35} The sixth assignment of error is overruled.
 {¶ 36} Finally, the seventh assignment of error alleges the trial court erred by causing his sentence to run consecutive to the sentence he was already serving in his unrelated robbery conviction. But, as he concedes, he cannot show us where the error is in the record because, as he also concedes, no transcript was made of the hearing. And he does not actually say why the consecutive sentence is an error, but argues only that because it is impossible to tell (no transcript) whether the trial court properly considered all the sentencing factors, we ought to reverse and remand for resentencing to ensure his rights were in fact protected.
 {¶ 37} We decline to do as he asks. Appellate Rule 12(A)(2) permits us to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based." And "[i]f no report of the evidence or proceedings at a hearing or trial was made, * * * the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." App. R. 9(C). It was Mr. Huber's responsibility to ensure the record was complete, and the rules provided him a means by which he could have done so. See App. R. 9(B). Because "pertinent information has not been provided *Page 13 
for us to adequately review the substance of [his] claims pursuant to App. R. 9, we are unable to evaluate the merits of the above-mentioned assignment[] of error and must presume that the trial court's proceedings were regular and correct." State v. Kreuzer (Aug. 6, 1999), Greene App. No. 98-CA-100, 1999 WL 959206, at *10.
 {¶ 38} We overrule the seventh assignment of error.
 {¶ 39} Finding no merit in any of the assignments of error, we affirm the trial court's judgment.
DONOVAN, P.J., and FAIN, J., concur.
Copies mailed to:
Amy M. Smith, Robert L. Mues, Shawn P. Hooks, Hon. Richard P. Carey. *Page 1