decision and journal entry
{¶ 1} Appellant, Donaze Gaines, appeals the decision of the Lorain County Court of Common Pleas, which found him guilty of possession of cocaine in violation of R.C. 2925.11. This Court affirms.
 I. {¶ 2} Appellant was a passenger in a vehicle driven by an informant working with the Erie County Drug Task Force. The informant had previously made two controlled buys of cocaine from appellant. The day before the incident in question, the informant told police that appellant had asked her to take him to Cleveland to purchase crack cocaine. With her permission, officers placed a GPS tracking device on the informant's car. Officers had arranged with the informant for her to make several lane changes without use of her signals in order to alert police that the vehicle could be stopped. The informant committed the traffic violations as planned, and Officer Carl Johnstone of the Erie County Drug Task Force pulled over the informant's vehicle. Appellant was removed from the vehicle and handcuffed for officer safety. Corporal Richard Grassnig of the Vermillion Police Department and his canine partner conducted a canine sniff of the outside of the vehicle. The dog alerted to the wheel area of the driver's side of the vehicle. Officers then conducted a search of the vehicle and found cocaine in the engine compartment.
 {¶ 3} On May 23, 2001, appellant was indicted by the Lorain County Grand Jury for possession of cocaine in violation of R.C. 2925.11(A). On June 13, 2001, appellant was arrested. Also on June 13, 2001, appellant posted bond and a pretrial was scheduled for June 29, 2001. On June 28, 2001, counsel for appellant filed a motion for continuance of the pretrial scheduled for June 29, 2001. The trial court granted appellant's motion and continued the pretrial until July 6, 2001. On July 6, 2001, the matter was reset for pretrial on August 10, 2001. The July 6, 2001 journal entry contains a speedy trial waiver pursuant to R.C. 2945.71 et seq. which was signed by appellant. On August 10, 2001, appellant again requested that the pretrial be continued and executed a speedy trial waiver. The pretrial was continued until September 14, 2001. On September 12, 2001, appellant again filed a motion to continue which was denied. On September 14, 2001, appellant executed another speedy trial waiver and, at his request, the matter was continued until October 19, 2001. On October 19, 2001, a hearing on appellant's motion regarding the State's confidential informant was set for January 18, 2002, and appellant again signed a speedy trial waiver. At appellant's request, the matter was then rescheduled for January 24, 2002. In an entry journalized on January 25, 2002, the hearing on appellant's motions regarding the confidential informant was continued until February 11, 2002, and a final pretrial was scheduled for February 7, 2002. The matter was continued once again on February 11, 2002, until May 7, 2002, by agreement of the parties. The journal entry dated February 11, 2002, notes: "Defendant hereby waives time pursuant to R.C. 2945.71 et seq." Appellant's counsel signed the journal entry. In an entry dated February 12, 2002, the jury trial was rescheduled for May 6, 2002. Appellant filed a motion to suppress on May 1, 2002. On May 2, 2002, appellant filed a second motion to suppress. On May 6, 2002, the trial was continued to July 1, 2002. The May 6, 2002 journal entry noted: "Defendant waives statutory time."
 {¶ 4} On June 4, 2002, appellant filed a demand for a speedy trial. Appellant filed a motion to dismiss on June 19, 2002. On July 9, 2002, appellant filed a second motion to dismiss. In an entry journalized on August 13, 2002, a hearing on all pending motions was scheduled for September 13, 2002. On September 13, 2002, the motion hearing was re-scheduled for October 18, 2002, because appellant's newly appointed counsel informed the trial court that he did not have a copy of the videotape of the traffic stop. On September 24, 2002, appellant filed a request for a new attorney. On October 4, 2002, appellant filed a third motion to dismiss. Also on October 4, 2002, appellant filed a motion to remove appointed counsel and to proceed pro se. On October 18, 2002, appellant filed a motion objecting to any further continuances. On October 18, 2002, appellant again informed the trial court that he did not have a copy of the videotape of the traffic stop. Therefore, the suppression hearing was scheduled for November 7, 2002, the date of the final pretrial. Appellant filed a motion to amend his motion to suppress on October 24, 2002. The trial was scheduled for November 18, 2002.
 {¶ 5} On October 30, 2002, appellant filed a motion for change of venue; a motion for independent analysis of the drugs that were at issue in the case; and a motion requesting the trial court to order the lab technician who tested the contraband to appear and testify at trial. The trial court granted appellant's motion for an independent analysis and denied the remaining motions which appellant filed on October 30, 2002. Hearings regarding appellant's two suppression motions were held on November 7, and November 18, 2002. The trial court denied both motions to suppress.
 {¶ 6} On November 21, 2002, appellant withdrew his plea of not guilty and entered a plea of no contest. The trial court accepted appellant's plea, found him guilty, and sentenced him accordingly.
 {¶ 7} Appellant timely appealed, setting forth three assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"The trial court erred to appellant's prejudice in violation of rights conferred by O.R.C. 2945.71, O.R.C. 2945.72, and O.R.C. 2945.73, ArticleI, Section 10 of the Ohio Constitution, and the Fifth, Sixth, andfourteenth amendments to the constitution of the united states, when it denied appellant's motion to discharge."
 {¶ 8} In his first assignment of error appellant argues that his statutory and constitutional rights to a speedy trial were violated. This Court disagrees.
 {¶ 9} When reviewing a defendant's claim that he was denied his right to a speedy trial, an appellate court applies the de novo standard to questions of law and the clearly erroneous standard to questions of fact. State v. Thomas (Aug. 4, 1999), 9th Dist. No. 98CA007058. The Supreme Court of Ohio has found that the statutory speedy trial provisions set forth in R.C. 2945.71 are coextensive with Ohio and federal constitutional speedy trial provisions. State v. O'Brien (1987),34 Ohio St.3d 7, paragraph one of the syllabus.
 {¶ 10} According to R.C. 2945.71(C)(2), a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." When computing the time for purposes of applying R.C.2945.71(C), "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C.2945.71(E).[1] When computing the time within which a defendant must be brought to trial under R.C. 2945.71, the day of arrest or service of summons is not included. See State v. Steiner (1991), 71 Ohio App.3d 249,250-251. If a defendant is not brought to trial within the prescribed time, the trial court must discharge the defendant upon a motion for dismissal prior to or at the commencement of trial. R.C. 2945.73(B).
 {¶ 11} Although R.C. 2945.71(A) sets forth time limits in which a defendant must be brought to trial, these time limits are not absolute. A defendant may waive his right to a speedy trial. O'Brien,34 Ohio St.3d at 9. Moreover, R.C. 2945.72 provides various circumstances in which the time limits may be tolled or extended. R.C. 2945.72 states, in relevant part:
"The time within which an accused must be brought to trial * * * may be extended only by the following:
"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
"* * *
"(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"
 {¶ 12} Between the time appellant was arrested and his change of plea, a total of 526 days elapsed. Therefore, appellant has demonstrated a prima facie violation of his speedy trial rights. "Once such demonstration has been made, the burden shifts to the state to prove `that actions or events chargeable to the [defendant], under the various subsections of R.C. 2945.72, extended or tolled enough time to leave less than two hundred seventy days remaining when [his motion] to dismiss [was] filed.'" State v. Harris (Oct. 30, 1996), 9th Dist. No. 95CA006275, quoting State v. Geraldo (1983), 13 Ohio App.3d 27, 28.
 {¶ 13} Appellant does not contest the period from June 28, 2001, until April 8, 2002, due to the speedy trial waivers either he or his trial counsel executed. However, the trial court's journal entry which was journalized on February 11, 2002, continues the matter until May 7, 2002. The February 11, 2002 entry was signed by appellant's trial counsel. Assuming that appellant's argument is correct and he did not execute any speedy trial waivers after February 11, 2002,[2]
appellant's speedy trial rights still were not violated.
 {¶ 14} After May 7, 2002, appellant filed multiple motions with the trial court, including three motions to dismiss; a request for a new attorney; a motion amending his suppression motion; a motion for change of venue; a motion for independent analysis of the contraband that was seized as a result of the search of the informant's van; and a motion requesting the court to order the lab technician who tested the contraband to appear and testify at trial. Each of the motions filed by appellant after May 7, 2002, tolled the speedy trial clock. R.C. 2945.72(H).
 {¶ 15} Given the numerous filings by appellant after May 7, 2002, all of which tolled the speedy trial clock, this Court finds that the time in which appellant had to be brought to trial was properly extended pursuant to R.C. 2945.72. Therefore, the days chargeable to the State were well below the statutory time limit. This Court finds that the trial court properly denied appellant's motion to dismiss pursuant to R.C. 2945.73.
 {¶ 16} Appellant also argues that, in addition to violating his statutory right to a speedy trial, the state violated his constitutional right to a speedy trial. The statutory speedy trial provisions of R.C.2945.71 and the constitutional guarantees found in the Ohio and United States Constitutions are coextensive. O'Brien, 34 Ohio St.3d at paragraph one of the syllabus. Because there has been no statutory violation in appellant's case, the burden is upon him to demonstrate that his constitutional right to a speedy trial has been denied. State v. Gettys
(1976), 49 Ohio App.2d 241, 244, citing Barker v. Wingo (1972),407 U.S. 514, 33 L.Ed.2d 101. The four factors that the trial court must weigh in considering this question are the length of delay, reason for delay, assertion of the right, and resulting prejudice. Gettys,49 Ohio App.2d at 244. These related factors must be considered together with any other relevant circumstances; the trial court must engage in a balancing process. Id. at 245.
 {¶ 17} The length of delay is easily ascertained. Five hundred and seventy-six days elapsed between appellant's arrest and change of plea, 306 days beyond the maximum prescribed by statute. Such delay is not a per se violation of one's constitutional rights. Upon review of the record, the reasons for the delay in appellant's case are reasonable and justified. In fact, most of the delay is attributable to him.
 {¶ 18} Regarding assertion of the right to a speedy trial, at no time before his statutory right had expired did appellant make a demand for trial or move to dismiss. Appellant's first motion to dismiss was filed well beyond the date he claims his statutory time had expired. "The accused's failure to affirmatively assert constitutional speedy trial rights is to be accorded heavy evidentiary weight, and can prove fatal to a claim of constitutional violation." Harris, citing Gettys,49 Ohio App.2d at 246-247. "Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker,407 U.S. at 532.
 {¶ 19} Finally, there is the element of resulting prejudice. Appellant was not subjected to oppressive pretrial incarceration, nor does review of the record indicate the defense was impaired by the delay. Id. While appellant argues his unavailability due to incarceration "directly and indirectly resulted in the loss of witnesses, exculpatory and other direct evidence," he fails to give further explanation. "Such an unsubstantiated assertion cannot be considered absent some supporting reference to facts and evidence in the record." Harris, citing SykesConstr. Co. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038. Appellant gives no detail as to which witnesses and evidence were lost due to the length of his incarceration, nor does he correlate the length of his incarceration to what he claims is the resulting prejudice.
 {¶ 20} Balancing the above factors in light of the circumstances of the case, this Court cannot hold the trial court erred in denying appellant's motion to dismiss for lack of a speedy trial based on constitutional grounds.
 {¶ 21} Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"The trial court erred to appellant's prejudice in violation of rights conferred by article I, Section 10 of the Ohio constitution, and the Fifth[,] Fourth[,] and Fourteenth amendments to the constitution of the united states, when it denied appellant's motions to suppress evidence and statements made to law enforcement."
 {¶ 22} In his second assignment of error, appellant argues that the court erred in denying his two motions to suppress. This Court disagrees.
 {¶ 23} First, appellant challenges the trial court's denial of his motion to suppress all evidence obtained as a result of the search of the vehicle in which appellant was a passenger. Specifically, appellant argues that Officer Johnstone, the officer who pulled over the vehicle in which appellant was a passenger, lacked reasonable articulable suspicion to stop the vehicle. This Court disagrees.
 {¶ 24} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9. Accordingly, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996),112 Ohio App.3d 521, 548, appeal not allowed (1996), 77 Ohio St.3d 1488, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653. An appellate court, therefore, is bound to accept a trial court's factual findings that are supported by competent, credible evidence. State v. Searls
(1997), 118 Ohio App.3d 739, 741; State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, the trial court's application of law to the factual findings is reviewed de novo on appeal. State v. Russell
(1998), 127 Ohio App.3d 414, 416. See, also, Ornelas v. United States
(1996), 517 U.S. 690, 699, 134 L.Ed.2d 911.
 {¶ 25} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures unless an exception applies. An investigative stop is a common exception to the Fourth Amendment warrant requirement. In Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889, the United States Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. In Delaware v. Prouse (1979), 440 U.S. 648, 653, 59 L.Ed.2d 660, the court held that an officer may stop an automobile under the Terry stop exception if the officer possesses the requisite reasonable suspicion based upon specific and articulable facts. See, also, State v.Gedeon (1992), 81 Ohio App.3d 617, 618. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. Statev. Freeman (1980), 64 Ohio St.2d 291, certiorari denied (1981),454 U.S. 822, 70 L.Ed.2d 94, paragraph one of the syllabus.
 {¶ 26} Here, under the totality of the circumstances, the police had more than sufficient reasonable suspicion to believe there was contraband, namely drugs, inside the vehicle; they had probable cause. The vehicle in which appellant was a passenger belonged to an informant working with the Erie County Drug Task Force. The informant had previously made two controlled buys of cocaine from appellant. The day before the incident in question, the informant notified police that appellant had asked her to take him to Cleveland to purchase crack cocaine. The informant told police that she would be driving her van to take appellant to buy the crack cocaine. With the informant's permission, the police placed a GPS tracking device on her van. Officers arranged for the informant to make several improper lane changes. The informant made the unsignaled lane changes as previously arranged with the officers. Given these facts, the officers had probable cause to believe that criminal behavior, a drug transaction, had occurred and to stop the vehicle.[3]
 {¶ 27} The trial court did not err in overruling appellant's motion to suppress evidence found as a result of the search of the vehicle.
 {¶ 28} Appellant also challenges the denial of his motion to suppress statements he made to law enforcement officers. Specifically, appellant argues that he did not waive his Miranda rights and that he was coerced into making incriminating statements. Appellant's argument is without merit.
 {¶ 29} Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself. Miranda v.Arizona (1966), 384 U.S. 436, 444, 16 L.Ed.2d 694, provides that in order to protect a defendant's Fifth Amendment right against self-incrimination, statements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed certain procedural safeguards. Id. Specifically, an individual must be advised prior to custodial interrogation that 1) he has a right to remain silent, 2) any statement he makes may be used as evidence against him, and 3) he has a right to the presence of an attorney. Id.
 {¶ 30} A defendant may, however, waive his Miranda rights, provided that such a waiver is knowingly, voluntarily, and intelligently made.Moran v. Burbine (1986), 475 U.S. 412, 421, 89 L.Ed.2d 410. Further, it is the prosecution's burden to prove, by a preponderance of the evidence, that the defendant knowingly, voluntarily, and intelligently waived those rights based on the totality of the circumstances surrounding the investigation. State v. Gumm (1995), 73 Ohio St.3d 413,429, 1995-Ohio-24, certiorari denied (1996), 516 U.S. 1177,134 L.Ed.2d 221.
 {¶ 31} The United States Supreme Court has rejected a per se rule which would require an explicit waiver and held that refusal to sign a waiver form is not dispositive of the issue of waiver. North Carolina v.Butler (1979), 441 U.S. 369, 60 L.Ed.2 286. In Butler, the Court held:
"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." Id at 373.
 {¶ 32} In the present case, Special Agent James Waldron of the U.S. Department of Housing and Urban Development was involved in the investigation of appellant's alleged drug trafficking in the Cleveland and Elmwood areas. While appellant was in custody at the Cleveland City Jail, Special Agent Waldron was informed that appellant wished to speak with someone regarding his drug trafficking. Special Agent Waldron and Detective Jim Cudo of the Cleveland Police Department arranged to interview appellant at the Cleveland City Jail.
 {¶ 33} Special Agent Waldron testified that, prior to either Detective Cudo or himself speaking with appellant, Detective Cudo read appellant his Miranda rights, and that he provided appellant with a copy so that he could follow along as Detective Cudo read them to him. Special Agent Waldron further testified that appellant agreed to talk to them, but refused to sign the waiver form. When asked about appellant's demeanor during his interview with him, Special Agent Waldron testified that appellant seemed to understand what Detective Cudo was explaining to him. Appellant did not advise the officers that he had obtained counsel to represent him in a case in Lorain County or that he no longer wished to talk to them.
 {¶ 34} Obviously, the trial court believed appellant had expressly waived his Miranda rights. The trial court was in the best place to evaluate the Officer's credibility on this issue. Hopfer,112 Ohio App.3d at 548.
 {¶ 35} Appellant also claims that he was coerced into speaking with police officers. The only evidence of coercion presented by appellant, however, is his own statement that the officers told him that he would get substantial time if he did not cooperate with them. However, Special Agent Waldron testified that no promises or threats were made to secure appellant's confession. This Court will not second-guess the trial court regarding matters of witness credibility. Id.
 {¶ 36} The trial court did not err in overruling appellant's motion to suppress statements he made to police officers.
 {¶ 37} Having concluded that the trial court properly overruled appellant's motions to suppress, appellant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
"Appellant was deprived of his right to the effective assistance of counsel as guaranteed by the sixth and fourteenth amendments to the united states constitution and Article I, Section 10 of the ohio constitution."
 {¶ 38} In his third assignment of error, appellant claims that he was deprived of his right to the effective assistance of counsel. This Court finds that appellant has failed to meet the first prong of the test set forth in Strickland v. Washington, (1984), 466 U.S. 668, 687,80 L.Ed.2d 674.
 {¶ 39} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test:
"`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 466 U.S. at 687.
 {¶ 40} Defendant bears the burden of proof on this matter. Colon at ¶ 49, citing State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, there exists a strong presumption of the adequacy of counsel's performance, and that counsel's actions were sound trial tactics. Colon at ¶ 49, citing Smith, 17 Ohio St.3d at 100. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v. Watson (July 30, 1997), 9th Dist. No. 18215.
 {¶ 41} In the present case, appellant claims that he was denied effective assistance of counsel when his attorney failed to file a motion to dismiss pursuant to R.C. 2945 and his federal and state constitutional rights. Given this Court's disposition of appellant's first assignment of error, we cannot find that appellant's trial counsel's performance fell below an objective standard of reasonableness.
 {¶ 42} Consequently, appellant's third assignment of error is overruled.
 III. {¶ 43} Appellant's three assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, J., Batchelder, J., Concur.
[1] This Court notes that appellant was arrested in October 2001, on a federal warrant. However, where a defendant is held for reasons other than the pending charges, be it judicial or administrative, the triple-count provision does not apply, and the defendant's right to a speedy trial is not infringed. See State v. Jones (1992),81 Ohio App.3d 348, 351. Therefore, in this case, the State had two hundred and seventy days to bring appellant to trial instead of ninety.
[2] This Court notes that the trial court's May 6, 2002 entry notes: "Defendant waives statutory time." However, the journal entry is not signed either by appellant or by his trial counsel. Therefore, this Court will not consider it a valid waiver of appellant's speedy trial rights. See Village of Ottawa Hills v. Afjeh (June 23, 2000), 6th Dist. No. L-99-1074.
[3] Although appellant does not directly challenge the actual search of the vehicle, this Court notes that the informant consented to the search of the vehicle.