[Cite as *State v. Basford*, 2021-Ohio-161.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

MICHAEL D. BASFORD

    Appellant

C.A. No.     20CA0017-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    18CR1235

DECISION AND JOURNAL ENTRY

Dated: January 25, 2021

CARR, Presiding Judge.

{¶1}    Appellant, Michael Basford, appeals the judgment of the Medina County Court of Common Pleas.  This Court affirms.

I.

{¶2}    This matter arises out of two encounters that Basford had with law enforcement in 2018.  During a traffic stop of Basford's vehicle, an officer found what appeared to be cocaine as well as a smoking device that contained methamphetamine.  Several weeks later, officers seeking to execute an arrest warrant for Basford went to his hotel room and found additional drugs and drug paraphernalia.

{¶3}    The Medina County Grand Jury initially returned an indictment charging Basford with one count of aggravated possession of drugs and one count of possession of cocaine.  The grand jury then retuned a supplemental indictment charging Basford with another count of aggravated possession of drugs.  Thereafter, the indictment was supplemented on a second

occasion and Basford was charged with two additional counts of aggravated possession of drugs and one count of possession of heroin. One of the counts of aggravated possession of drugs in the second supplemental indictment was charged as a felony of the first degree because the amount of methamphetamine involved was alleged to have equaled or exceeded fifty times the bulk amount. Basford pleaded not guilty to all of the charges at the arraignment stage.

{¶4} The trial court set the matter for a jury trial. Prior to the commencement of trial, Basford filed a motion to dismiss the charges on speedy trial grounds. After hearing arguments from the parties, the trial court denied the motion. The State moved to dismiss the count of aggravated possession of drugs contained in the first supplemental indictment. The trial court granted the motion.

{¶5} The matter proceeded to trial and the jury found Basford guilty of all the remaining charges. The trial court ordered a presentence investigation report. Thereafter, the trial court imposed a five-year prison term on the count of first-degree felony aggravated possession of drugs contained in the second supplemental indictment. The trial court imposed one-year prison sentences on the remaining counts and ordered all of the sentences to be served concurrently for an aggregate prison term of five years. Basford was granted jail time credit for 413 days served.

{¶6} On appeal, Basford raises five assignments of error. This Court rearranges certain assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY FAILING TO DISMISS THE INDICTMENT AGAINST APPELLANT AFTER HIS SPEEDY TRIAL RIGHTS WERE VIOLATED.

{¶7} In his first assignment of error, Basford contends that the trial court violated both his statutory rights and his constitutional rights when it denied his motion to dismiss the indictment on speedy trial grounds. This Court disagrees.

{¶8} "When a trial court denies a motion to dismiss on speedy trial grounds, this Court reviews questions of law de novo, but considers whether the trial court's factual determinations are clearly erroneous." *State v. Gall*, 9th Dist. Lorain No. 18CA011445, 2019-Ohio-4907, ¶ 5, quoting *State v. Burroughs*, 9th Dist. Lorain No. 14CA010595, 2016-Ohio-1139, ¶ 4. "The Supreme Court of Ohio has found that the statutory speedy trial provisions set forth in R.C. 2945.71 are coextensive with Ohio and federal constitutional speedy trial provisions." *State v. Purefoy*, 9th Dist. Summit No. 27992, 2017-Ohio-79, ¶ 8, quoting *State v. Gaines*, 9th Dist. Lorain No. 00CA008298, 2004-Ohio-3407, ¶ 9, citing *State v. O'Brien*, 34 Ohio St.3d 7 (1987), paragraph one of the syllabus.

{¶9} R.C. 2945.71(C)(2) states that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(E) provides that "[f]or purposes of computing time under [R.C. 2945.71(C)(2)], each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by [R.C. 2945.71 and 2945.72]." R.C. 2945.73(B).

{¶10} The General Assembly has recognized that flexibility is necessary under certain circumstances in bringing a defendant to trial. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, ¶ 24. R.C. 2945.72 provides that the time within which the defendant must be brought to trial can be extended by:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

{¶11} Basford was arrested on December 7, 2018, and he experienced difficulties posting bond. Basford was given a personal recognizance bond on December 18, 2019, and he was released from jail at that time.

{¶12} The speedy trial controversy in this matter stems from Basford's desire for an independent analysis of a substance found in his hotel room.[1] Basford filed a motion for an independent analysis on January 23, 2019. The following week, on January 28, 2019, the trial

---

[1] A review of the record suggests that there were multiple tolling events that do not appear to be in dispute in this appeal.

court granted Basford's motion and ordered the State to make a representative sample of the substance in question available. Basford also successfully moved for the appointment of an expert witness around that time. The State expressed a number of concerns regarding the transportation of the substance as well as the testing procedure. After the parties appeared for a hearing on July 15, 2019, the trial court issued a journal entry ordering an agent of the Medina County Drug Task Force to transfer the evidence to and from the Miami Valley Regional Crime Lab. The trial court further designated a contact person at the crime lab and ordered that the agent from the Medina County Drug Task Force would be present during the testing procedure. After a subsequent status hearing, the trial court issued a journal entry on August 5, 2019, specifying that the testing must be performed by an independent lab technician at the Ohio Bureau of Criminal Investigation's lab. Further issues arose and, on October 2, 2019, the trial court approved fees in an amount of up to $1,500 for Basford to obtain an independent analysis of the controlled substance by Larry Dehus of Law Science Technologies. The independent testing was performed by Dehus on October 9, 2019, and the State received the report later that month.

{¶13} Prior to trial, Basford moved to dismiss the indictment on speedy trial grounds. The crux of Basford's argument was that speedy trial time should have been charged to the State for the period between June 19, 2019, and October 9, 2019, because it was during that time that the State raised concerns over the testing location and procedure. The State responded that the law provides that time tolls from the date that the defendant requests the independent testing to the date that the State receives the report. The State further maintained that it had an interest in ensuring that the testing procedure was reliable. In a journal entry rejecting Basford's argument, the trial court stated that "[t]he period of delay between Basford's motion for independent testing, the completion of that testing, and the time for Basford to obtain the expert report was a period of

delay necessitated by Basford. * * * [T]ime was tolled during that period. The fact that there was some disagreement between Basford and the State [] as to the testing procedure and location does not cause time to be charged to the State[.]"

{¶14} On appeal, Basford maintains that he had an "absolute right" to have an independent analysis of the substance in question and that the State was required to cooperate pursuant to R.C. 2925.51. It follows, according to Basford, that any delays that occurred subsequent to the time he made arrangements for an independent analysis should have been charged to the State for speedy trial purposes.

{¶15} Basford's argument is without merit. A defendant's motion for an independent analysis of a substance alleged to be contraband serves as a tolling event for speedy trial purposes. *See Gaines*, 2004-Ohio-3407, at ¶ 14. Here, Basford filed his motion on January 23, 2019, and the trial court granted the motion the following week. Thereafter, the parties clashed on several procedural and logistical issues surrounding the testing. Multiple hearings were required to resolve these issues and the independent analysis was not performed until October 9, 2019. R.C. 2925.51(E) and (F) set forth a procedure for a criminal defendant to secure an independent analysis of the substance alleged to be a controlled substance. Basford has cited no authority in support of the proposition that his right to an independent analysis was "absolute" in the sense that the State had no interest in logistical concerns relating to the transportation of the substance and the testing procedure. *See* App.R. 16(A)(7). This case does not involve a scenario where the State engaged in delay tactics. Instead, after Basford successfully moved for the independent testing, the State merely sought to ensure that the testing was legitimate. Under these circumstances, the trial court did not err in denying Basford's motion to dismiss the indictment on speedy trial grounds on the

basis that time tolled during the period where the parties resolved issues pertaining to the independent analysis.

{¶16} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN
A CONVICTION AGAINST APPELLANT.

{¶17} In his second assignment of error, Basford maintains that the State failed to present sufficient evidence to sustain his first-degree felony conviction for aggravated possession of drugs because the State failed to prove the actual amount of methamphetamine found in the red liquid seized from his hotel room. This Court disagrees.

{¶18} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶19} Basford challenges his conviction for aggravated possession of drugs in violation of R.C. 2925.11(A)/(C)(1)(d).[2] R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(C)(1)(d) provides that "[i]f the drug involved in the violation is a compound, mixture, preparation, or

---

[2] R.C. 2925.11 was amended effective March 22, 2019, but those amendments are not material to this appeal.

substance included in schedule I or II[] * * * [and] [i]f the amount of the drug involved equals or exceeds fifty times the bulk amount but is less than one hundred times the bulk amount, aggravated possession of drugs is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term."

{¶20} The drug at issue in this case was methamphetamine, a Schedule II controlled substance. *See* former R.C. 3719.41, Schedule II(C)(2).[3] "Methamphetamine" is defined as "methamphetamine, any salt, isomer, or salt of an isomer of methamphetamine, or any compound, mixture, preparation, or substance containing methamphetamine or any salt, isomer, or salt of an isomer of methamphetamine." R.C. 2925.01(II). R.C. 2925.01(D)(1)(g) states that a "bulk amount" is "[a]n amount equal to or exceeding three grams of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II stimulant, or any of its salts or isomers, that is not in a final dosage form manufactured by a person authorized by the Federal Food, Drug and Cosmetic Act and the federal drug abuse control laws."

{¶21} The State presented evidence at trial supporting the following narrative. On the morning of September 16, 2018, Deputy Koval was on patrol on Ridgewood Road in Medina when he observed Basford's vehicle swerve into oncoming traffic, nearly striking another vehicle. Deputy Koval executed a traffic stop. Basford was unable to produce a driver's license. Deputy Koval noticed that Basford was attempting to conceal a small green pipe between his legs as he sat in the driver's seat. At that point, Deputy Koval handcuffed Basford and transported him to the cruiser. During the ensuing search of Basford's vehicle, Deputy Koval found what appeared to be cocaine in the ashtray. Deputy Koval also found a container of marijuana. Basford was

---

[3] R.C. 3719.41 was also amended since the incident that gave rise to this case, but those amendments are not at issue.

charged with possession of marijuana and possession of drug paraphernalia, in addition to multiple traffic offenses. After making arrangements to have the vehicle towed, Deputy Koval drove Basford to a nearby gas station where he was released. Deputy Koval informed Basford that he would be charged with additional offenses if any of the items seized during the stop tested positive for a controlled substance.

{¶22} Testing by the Ohio Bureau of Criminal Investigation (BCI) revealed that the pipe found between Basford's legs contained a residual amount of methamphetamine. The testing also showed that the off-white substance located in the vehicle was cocaine.

{¶23} Around midnight on October 27, 2018, several officers from the Wadsworth Police Department went to the Legacy Inn in Wadsworth to execute an arrest warrant for Basford. The officers spotted Basford's truck outside room 418. The officers knocked on the door and, after a brief delay, Basford opened the door and stepped out. The officers detained him.

{¶24} After being taken into custody, Basford asked if he could smoke a cigarette. The officers did not object. Basford explained that he had a cigarette but he did not have a lighter. Officer Petit told Basford that the officers could either retrieve a lighter for him or one of them could accompany Basford into the hotel room if he wished to retrieve the lighter himself. Basford elected to go back into his room with Officer Godwin. Upon entering the room, Officer Godwin observed a razor blade with a white substance on it, a bindle with a powdery substance on it, as well as multiple butane torches. All of these items were in plain view. Basford admitted at the scene that the powdery substance in the bindle was methamphetamine. After conducting a protective sweep of the room, the officers obtained a search warrant. During the ensuing search, the officers found a number of items that were related to drug use, including what appeared to be a wine bottle containing red liquid that had a pipe attached to it.

{¶25} While in the Medina County Jail, Basford requested to speak with a member of the Medina County Drug Task Force. Agent McCune, who was present at the hotel when the search warrant was executed, traveled to the jail to conduct an interview with Basford. During the interview, Basford admitted that he was an opiate and methamphetamine user. When asked about the bottle with red liquid, Basford admitted that it was his and explained that someone in West Virginia had taught him how to make a bong for methamphetamine. Basford obtained a special drill bit and practiced drilling on several other bottles that were found in the room. Agent McCune testified that, "[Basford] actually said he took the wine out and put Kool-Aid in there for the – for the water bong. * * * [Basford] stated that he did this so that when smoking through the device, it took out the chemical taste of methamphetamine when smoking."

{¶26} Shervonne Bufford, who serves as a forensic scientist at BCI, performed testing on six pieces of evidence recovered from the hotel room. Three items tested positive for controlled substances. The first item consisted of two folded paper packets containing a powdery pink substance that tested positive for heroin and fentanyl. The second item was a folded paper packet containing a tan substance that tested positive for fentanyl. The third item was the red liquid found in the bottle, which tested positive for methamphetamine.

{¶27} With respect to the red liquid, Bufford testified that the weight of the liquid was 244.95 grams. Bufford performed both an acid extraction and a base extraction on the substance. Analysis of the base extraction revealed that the liquid contained methamphetamine. The acid extraction did not reveal the presence of any additional controlled substances. Two subsequent instrumental tests revealed the presence of methamphetamine in the liquid. Bufford testified that methamphetamine is considered a Schedule II controlled substance because it can be used for medical purposes under certain scenarios and a bulk amount of methamphetamine is three grams.

When asked if she could render an opinion with a reasonable degree of scientific certainty, Bufford responded, "the red liquid[] was found to be weighed at 244.95 grams, plus or minus .04 grams, and found to contain methamphetamine; and that was all determined using instrumental analysis."

{¶28} On appeal, Basford maintains "the State was required to establish the actual amount of methamphetamine in the seized liquid before that amount could be compared to the abstract 'bulk amount,' in order to determine whether he possessed more than the bulk amount, or in this case, more than fifty times the bulk amount." Stressing that the liquid itself was not a drug, Basford argues that the State failed to meet its burden to convict him of a first-degree felony violation of R.C. 2925.11(A)/(C)(1)(d). Basford further maintains that even assuming he did possess fifty times the bulk amount of methamphetamine, there was no evidence that he did so knowingly.

{¶29} We do not find Basford's sufficiency argument to be persuasive as the pertinent statutes do not require the State to prove the actual amount of the controlled substance found in a mixture. As noted by the State in its merit brief, the line of reasoning offered by Basford is somewhat akin to the arguments considered by the Supreme Court in *State v. Gonzales*, 150 Ohio St.3d 261, 2016-Ohio-8319, ¶ 1 (*Gonzales I*), a case where the high court contemplated whether "the [S]tate, in prosecuting cocaine offenses involving mixed substances * * * [was required to] prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture[.]" Although the Supreme Court initially answered that question in the affirmative, it noted that the statutory definition of cocaine did not include the term "mixture[,]" unlike the statutory definition of methamphetamine. *Id*. at ¶ 19. The Supreme Court ultimately granted a motion for reconsideration and reversed course as it related to the underlying issue, holding that "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purposes of determining the appropriate

penalty for cocaine possession[.]" *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, ¶ 3 (*Gonzales II*).

{¶30} The instant matter centers on the red liquid recovered from Basford's hotel room. The plain language of R.C. 2925.01(II) states that "any compound, mixture, preparation, or substance containing methamphetamine" falls within the definition of a methamphetamine. "[T]he unambiguous language of R.C. 2925.01[(II)] states that a mixture or substance that contains methamphetamine is methamphetamine as a matter of law." *State v. Scoggins*, 4th Dist. Scioto No. 16CA3767, 2017-Ohio-8989, ¶ 61. *See also State v. Thomason*, 11th Dist. Ashtabula No. 2016-A-0027, 2017-Ohio-7447, ¶ 33 ("[T]he unambiguous language of R.C. 2925.01[(II)] states that a mixture or substance that contains methamphetamine is methamphetamine."). A reviewing court is required to "apply the unambiguous language of the law as written." *State v. Rackley*, 4th Dist. Ross No. 17CA3616, 2019-Ohio-1981, ¶ 18, quoting *Thomason* at ¶ 35. "And unless or until the legislature changes the definition of methamphetamine to exclude compounds, mixtures, preparations, or substances that are not useable, strange and arguably absurd results will be achieved." *Rackley* at ¶ 18, quoting *Thomason* at ¶ 35.

{¶31} Here, the State demonstrated that Basford was in possession of a container of red liquid that tested positive for methamphetamine. The liquid constituted a methamphetamine mixture or substance that weighed 244.95 grams, more than fifty times the bulk amount of methamphetamine. *See* R.C. 2925.01(D)(1)(g). This evidence was sufficient to sustain Basford's conviction for a first-degree felony aggravated possession of drugs in violation of R.C. 2925.11(A)/(C)(1)(d). To the extent that Basford now contends that he did not knowingly possess fifty times the bulk amount of methamphetamine, we note that Basford admitted to Agent McCune that the red liquid found in the hotel room belonged to him. Basford's statements to Agent McCune

showed that he had a high level of awareness as to the drugs in his hotel room. Basford further demonstrated knowledge of a fairly involved process that he used to create both the device that contained the red liquid as well as the methamphetamine mixture itself. Thus, the aforementioned evidence, when construed in the light most favorable to the State, was sufficient to sustain Basford's conviction.

{¶32} Basford's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN IT DID NOT PERMIT APPELLANT TO ALLOW ITS OWN EXPERT TO TESTIFY AT TRIAL.

{¶33} In his fourth assignment of error, Basford argues that the trial court violated his constitutional right to present a defense when it refused to permit his expert witness, Larry Dehus, to testify at trial. This Court disagrees.

{¶34} Generally speaking, "[t]he decision to admit or exclude evidence lies in the sound discretion of the trial court." *State v. Wright*, 9th Dist. Lorain No. 05CA008675, 2006-Ohio-926, ¶ 5, citing *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *Wright* at ¶ 5. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶35} A review of trial transcript reveals that Basford attempted to call Dehus to testify as an expert witness regarding testing that he performed on the red liquid recovered from Basford's hotel room. The State filed a motion in limine prior to trial to exclude Dehus's report. At trial, the State renewed its objection on the basis that the findings in Dehus's report were not relevant

to the proceedings. The trial court decided that it would allow the parties to voir dire Dehus outside the presence of the jury prior to making a ruling as to whether he could testify. Prior to allowing questioning, the trial court informed Dehus that it had "made a determination that the state of the law in the State of Ohio is that any mixture or compound that contains methamphetamine is methamphetamine for the purposes of the Jury's determination as to weight."

{¶36} During voir dire, Dehus testified that he works as a forensic analysist at Law Science Technologies, a business that he founded and manages. Dehus performed testing on the red liquid recovered from Basford's hotel room and prepared a report. Dehus explained that the purpose of his work was, in part, to determine whether he agreed that there was methamphetamine in the red liquid. After performing an extraction and instrumental testing, Dehus found that the red liquid contained trace amounts of methamphetamine. While Dehus did not perform quantitative analysis, he extracted 21.46 grams of the liquid and found that the amount of methamphetamine present was not a weighable quantity. Dehus suggested that the liquid itself was not necessary for the bong to be used. Dehus explained that "the purpose of the liquid is to cool it and make the vapor more palatable." Dehus expressed his view that there was not 244.95 grams of methamphetamine in the liquid and that the main component of the mixture was the water. In conclusion, Dehus opined that the methamphetamine was "simply a waste product[.]" Though he acknowledged that the basis for his opinion was "not very scientific," Dehus testified that his research of online postings from people who have used methamphetamine bongs aided him in forming that opinion.

{¶37} The trial court ultimately found that Dehus's testimony was not relevant. After discussing several cases that addressed whether methamphetamine mixtures fall within the

statutory definition of methamphetamine, the trial court made the following statement on the record:

> With that in mind, the Court is going to make the determination that the expert's testimony – report and purported testimony in this matter is not relevant to the issue at hand, whether or not this was a waste product or incidental or anything else. [Dehus] clearly testified that the orange liquid [] contained methamphetamine, and the consequence of that is that the Court is going to issue an order not permitting him to testify in such a manner.

{¶38} On appeal, Basford couches his argument in terms of constitutional error. Specifically, Basford contends that the trial court's decision to exclude Dehus's testimony violated his right to call witnesses to testify in his defense in violation of the Sixth and Seventh Amendments to the United States Constitution, as well as Article I, Section 10 of the Ohio Constitution. Basford further points to the United States Supreme Court's decision in *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), for the proposition that criminal defendants enjoy a constitutional right to present a complete defense.

{¶39} Basford correctly notes that the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee the right to compulsory process. Furthermore, the United States Supreme Court has recognized that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes* at 324, quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Notably, however, the *Holmes* court explained that "[w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence * * *." *Holmes* at 326. "Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive * * *, only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." (Internal quotations and citations omitted.)

*Id*. at 326-327. The Ohio Rules of Evidence provide that any evidence presented at trial must be relevant to the matter at issue. Evid. R. 402 ("Evidence which is not relevant is not admissible.").

{¶40} In this case, the trial court did not abuse its discretion when it excluded Dehus's testimony on the basis that it was not relevant. The trial court's ruling was predicated on the premise that "any compound, mixture, preparation, or substance containing methamphetamine" falls within the definition of methamphetamine set forth in R.C. 2925.01(II). Accordingly, any testimony that Dehus would have offered about the specific amount of methamphetamine in the red liquid was not relevant, given that the weight of the red liquid had been established. Under these circumstances, we cannot say that the trial court's decision to exclude Dehus's testimony was unreasonable, arbitrary, or unconscionable.

{¶41} Basford's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR III

APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶42} In his third assignment of error, Basford contends that his conviction for first-degree felony aggravated possession of drugs is against the weight of the evidence. This Court disagrees.

{¶43} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶44} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶45} In support of his manifest weight challenge, Basford contends that the jury misunderstood the purpose of the bong water. Basford suggests that "[t]he water in the water-pipe, or bong, has a limited purpose – to cool the smoke or in this case, to mellow the flavor. Afterwards, you discard it. * * * So the used water has no other purpose." Basford further maintains that the jury would not have lost its way if Dehus would have been permitted to testify.

{¶46} Basford's argument is without merit. At trial, Shervonne Bufford acknowledged that while the instruments she utilized can be used for quantitation testing, there was no quantitation testing done in this case. Bufford explained "[i]t was not in our policy and procedures, nor has it been deemed necessary for the laboratory system to quantitate[] [b]ecause of the way that the laws are written[.]" Defense counsel asked Bufford if she was aware of instances where individuals had "reuse[d] bong water to get high?" Bufford responded in the affirmative based on her conversations with law enforcement officials but noted that she was not aware of any scientific literature that addressed that issue. As noted above, R.C. 2925.01(II) states that "any compound, mixture, preparation, or substance containing methamphetamine" falls within the definition of methamphetamine. Thus, the State was not required to show the actual amount of drugs in the methamphetamine mixture found in Basford's hotel room. *See* Discussion of Assignment of Error

II, *supra*. Furthermore, Basford's argument regarding his expert is unpersuasive given that Basford has failed to demonstrate on appeal that the trial court abused its discretion by excluding that testimony. *See* Discussion of Assignment of Error IV, *supra*. Under these circumstances, we cannot say that this is the exceptional case where the jury clearly lost its way. *See Otten*, 33 Ohio App.3d at 340.

{¶47} The third assignment of error is overruled.

## ASSIGNMENT OF ERROR V

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY [] ARTICLE I, [SECTION 10] OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS.

{¶48} In his final assignment of error, Basford argues that he was denied effective assistance of counsel. This Court disagrees.

{¶49} In order to prevail on a claim of ineffective assistance of counsel, Basford must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Basford must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Basford must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. This Court need not address both

prongs of the *Strickland* test if the appellant fails to satisfy either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶50}  In support of his ineffective assistance claim, Basford contends that trial counsel rendered ineffective assistance when she failed to move for a judgment of acquittal at the close of the State's case in chief. Basford maintains that trial counsel should have at a minimum moved for a judgment of acquittal as to the first-degree felony charge of aggravated possession of drugs on the basis that "it was almost all water and only a trace amount of meth." As an initial matter, we note that a defendant's failure to move for a judgment of acquittal pursuant to Crim.R. 29 at the close of the State's case does not constitute forfeiture of a sufficiency argument on appeal. *See State v. Thornton*, 9th Dist. Summit No. 23417, 2007-Ohio-3743, ¶ 13-14. In resolving Basford's second assignment of error above, this Court concluded that the State met its burden of production to sustain Bradford's first-degree felony conviction for aggravated possession of drugs. Namely, the State demonstrated that Basford knowingly possessed more than fifty times the bulk amount of methamphetamine. It follows that even if defense counsel had moved for a judgment of acquittal, Basford has failed to demonstrate that there is a reasonable probability that the result of trial would have been different. *See Keith* at 534.

{¶51}  Basford's final assignment of error is overruled.

### III.

{¶52}  Basford's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

THOMAS REIN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.